## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| R. Wayne Klein, Receiver of U.S. Ventures, LC, Winsome Investment Trust, and the assets of Robert J. Andres and Robert Holloway, | |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| Nina Abdulbaki, | **Case No.  2:11-CV-00953** |
| **Defendant.** | |

This matter is before the court on Defendant's Motion to Dismiss pursuant to Rule 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant argues that this court lacks personal jurisdiction over her and the claim for fraudulent transfer is time-barred. A hearing on the motion was held on May 30, 2012. At the hearing, Plaintiff was represented by David C. Castleberry and Defendant was represented by Christine T. Greenwood.  The court took the matter under advisement.  The court has considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

### BACKGROUND

In this action, Plaintiff R. Wayne Klein ("Receiver"), as receiver for US Ventures and Winsome Investment Trust, seeks to recover funds from Defendant Nina Abdulbaki, who was an

investor who received more money than she invested in the Ponzi scheme. On January 25, 2011, the Receiver was appointed in the District of Utah. On February 2, 2011, the Receiver filed a Notice of Receivership in the Southern District of Texas. Defendant is a resident of Texas. US Ventures is a Utah limited liability company and Winsome is a Texas trust.

US Ventures defrauded investors under the guise of commodity trading. Winsome, which also conducted its own fraudulent investment schemes, sent nearly $25 million to US Ventures. US Ventures was run by Robert Holloway and Winsome Investment Trust was run by Robert Andres, who had complete and sole authority over the trust.

Defendant owns and operates a barbeque restaurant and catering business in Houston. Defendant has never conducted business in Utah, and has never visited Utah. Defendant states that prior to this lawsuit, she had never heard of Robert Holloway or US Ventures, she did not know of their relationship with Winsome or Andres, and she did not know they were located in Utah.

Andres solicited Defendant to send funds for participation in a commodity futures pool that Andres said Winsome managed or controlled. Defendant states that she invested a total of $65,500 with Winsome. Defendant further states that between July 31, 2007, and March 28, 2008, Nina received direct payments from Winsome in the sum of $92,250. At the time these payments were made, Winsome was operating as a Ponzi scheme and thus was insolvent. On July 31, 2007, $35,000 was wired from the Winsome bank account in Texas to the Defendant's bank account. The Receiver filed the Complaint on October 13, 2011, approximately ten months after the Receiver was appointed and more than four years after the July 31, 2007 transfer.

2

**DISCUSSION**

**Defendant's Motion to Dismiss**

Defendant moves to dismiss the Receiver's Complaint, asserting that she is not subject to personal jurisdiction in this District and that the fraudulent transfer claims are untimely.

**I.      Rule 12(b)(2): Personal Jurisdiction**

First, Defendant argues that this court does not have personal jurisdiction over her. Defendant's motion to dismiss pursuant to Rule 12(b)(2) concerns two issues: (1) whether the federal statutes governing receiverships provide for nationwide service of process; and (2) whether personal jurisdiction over the Defendant in this District comports with the Due Process Clause of the Fifth Amendment.

A.      Federal Receiver Statutes

Defendant argues that this district lacks personal jurisdiction because the federal statutes governing receivership laws, 28 U.S.C. § 754 and §1692, confer nationwide service of process for *in rem* jurisdiction but not personal jurisdiction over a non-resident. *See Stegner v. Leadenhall Bank & Trust Co.*, No. 02C8655, 2004 U.S. Dist. LEXIS 4692, *21 (N.D. Ill. Mar. 19, 2004); *Stenger v. World Harvest Church, Inc.*, No. 02C8036, 2003 U.S. Dist. LEXIS 15108, *7, *10 (N.D. Ill. Aug. 29, 2003). Section 754 states that federal receivers are given the authority to protect receivership "property, real, personal, or mixed, situated in different districts" as long as the receiver "files[s] copies of the complaint and such order of appointment in the district court for each district in which property is located." 28 U.S.C. § 754. Additionally, Section 1692 states that in "proceedings in a district court where a receiver is appointed for property, real,

personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district... " 28 U.S.C. § 1692.

However, these *Stenger* decisions have been criticized as directly contrary to the law of this District and "are the only two cases that have held that the interaction of Sections 754 and 1692 do not extend in personam as well as in rem jurisdictions." *Quilling v. Grant Street Trust*, Case No. 3:04 CV 251, 2005 WL 1983879, at *3 (W.D.N.C. Aug. 12, 2005). For claims involving federal receiver law, this court has found that when 28 U.S.C. §§ 754 and 1692, are "[r]ead together, these Federal receiver statutes confer nationwide service of process" for in personam as well as in rem jurisdiction. *Wing v. Apex Holding Co., LLC*, Case No. 2:09-CV-00022, 2009 WL 2843343, at *3 (D. Utah Aug. 27, 2009).

Defendant asserts that the principles articulated in the *Stegner* cases comport with the Tenth Circuit's analysis in *Peay* that personal jurisdiction does not automatically result from the interplay between 28 U.S.C. §§ 754 and 1692. *See Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000).

However, the *Peay* analysis does not address whether §§ 754 and 1692 confer personal jurisdiction.  Rather, the Tenth Circuit's analysis in *Peay* simply articulates that, in addition to determining if applicable federal statutes confer personal jurisdiction, "the court must determine whether the exercise of jurisdiction comports with due process." *Peay*, 205 F.3d at 1209 (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997).

The court concludes that the federal receiver statutes provide for nationwide service of process for in personam as well as in rem jurisdiction. The court sees no reason to disregard past decisions in this District and follow the decisions of two cases in the Northern District of Illinois.

4

Moreover, the procedural requirements for exercising personal jurisdiction over the Defendant

have been satisfied in this case because of the timely filing of the Notice of Receivership in the

Southern District of Texas and because service of process was effectuated as prescribed by Rule

4 of the Federal Rules of Civil Procedure.

     B.     <u>Due Process Clause of the Fifth Amendment</u>

A federal district may only exercise personal jurisdiction over a non-resident defendant in

a nationwide service of process case if doing so comports with the due process clause of the Fifth

Amendment. *Peay*, 205 F.3d at 1212; *see also Wing v. Apex Holding Co., LLC*, No. 2:09-CV22,

2009 U.S. Dist. LEXIS 79175, *7 (D. Utah Aug. 27, 2009). The Fifth Amendment requires "the

plaintiff's choice of forum to be fair and reasonable." *Peay*, 205 F.3d at 1212. The standard for

determining whether significant inconvenience is established is set out by the Tenth Circuit, in

*Peay*:

> [I]n evaluating whether the defendant has met his burden of establishing
> constitutionally significant inconvenience, courts should consider the following
> factors: (1) the extent of the defendant's contacts with the place where the action
> was filed; (2) the inconvenience to the defendant of having to defend in a
> jurisdiction other than that of his residence or place of business; (3) judicial
> economy; (4) the probable situs of the discovery proceedings and the extent to
> which the discovery proceedings will take place outside the state of the
> defendant's residence or place of business; and (5) the nature of the regulated
> activity in question and the extent of impact that the defendant's activities have
> beyond the borders of his state of residence or business.

205 F.3d at 1212-13 (citations omitted).

Personal jurisdiction is presumed appropriate unless the defendant demonstrates, through

the *Peay* factors, that litigating in this forum is "so gravely difficult and inconvenient that she is

unfairly at a severe disadvantage in comparison to her opponent." *Wing v. Storms*, Case No.

5

1:02-CV-127DAK, 2004 WL 724448, at *2 (D. Utah Feb. 5, 2004). Furthermore, the court in *Peay* emphasized that "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." 205 F.3d at 1213.

Even if Defendant is able to show a significant inconvenience, the Court may still exercise personal jurisdiction over her if "the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant." *Peay*, 240 F.3d at 1213. This court has previously recognized in receivership litigation that "[t]here is a strong federal interest in having this court, which created the receivership, maintain litigation related to the receivership." *Storms*, 2004 WL 724448, at *3.

In this case, the first *Peay* factor favors the Defendant because she has no contacts with the State of Utah and has never had any reason to anticipate being brought to court in Utah. Although Defendant argues that at least a single contact must exist with this forum, the *Peay* analysis does not require contacts with Utah; rather it is only one of the five elements to be considered.

As to the second factor, there is no evidence demonstrating that it would be significantly inconvenient for Defendant to defend herself in this jurisdiction. Defendant argues that it would be unduly inconvenient to litigate in Utah because of the distance between Houston and Salt Lake and the small business she operates in Texas would suffer if this lawsuit took place in Utah. However, Defendant has not demonstrated that her husband, who runs her business with her, could not manage the business while she is away. And, as asserted by the Receiver, a flight from Houston to Salt Lake is only slightly longer than a flight from Houston to El Paso. Furthermore, technology has made it much easier to litigate in a distant forum.

The third factor favors the Receiver. This case is an ancillary proceeding to the U.S. Commodities Futures Trading Commission lawsuit brought in this District and judicial resources would be increased if multiple district courts are used. Defendant argues that because of advancements in modern-day communication, judicial economy would not be harmed. However, although modern technology makes it easier to litigate in multiple districts, it does not leave judicial economy completely unharmed. Additional judicial resources are used in order for multiple districts to become familiar with the facts, issues, and applicable law.

The fourth factor is evenly split. Defendant argues that discovery is likely to take place in Texas because the Defendant and Andres reside there, and Winsome was operated in Texas. Additionally, witnesses with knowledge of payments made by or to the Defendant will be located in Texas and any depositions will have to be taken there.  However, the Receiver is willing to travel to Texas for depositions. Furthermore, discovery will turn on the parties' financial records, which are electronic and can be transmitted easily. All of the records for the companies placed in receivership are now in Utah, and Andres and Holloway are being criminally prosecuted in Utah.

The final factor is also evenly split. The regulated activity in question is the administration of a receivership, which "by its nature, involves the resolution, in one centralized forum, of competing claims and interests arising from activities which may have occurred throughout the United States." *In re Harwell*, 381 B.R. 885, 891 (Bankr. D.Colo. 2008). Thus, this regulated activity favors the Receiver. However, the second element of this factor favors the Defendant because the Defendant's activities have no reach beyond the borders of Texas.

This court concludes that the Fifth Amendment due process clause is not violated in this case because Defendant failed to establish that she will suffer a severe disadvantage and/or that

this is a highly unusual case. The first *Peay* factor is the only factor clearly in the Defendant's favor. Even if the Defendant had met her burden, the federal interest in litigating this lawsuit in the District of Utah outweighs the burdens to Defendant. There is a strong federal interest in having this court, which created the receivership, maintain litigation related to the receivership. Furthermore, the value of the receivership would be questionable if the Receiver were required to litigate each individual lawsuit in the respective home districts of each defendant.

Based on these reasons, the court finds that personal jurisdiction over Defendant in the State of Utah is proper. Accordingly, Defendant's motion to dismiss pursuant to Rule 12(b)(2) is denied.

## II.    Rule 12(b)(6): Timeliness of Fraudulent Transfer Claims

Defendant also moves to dismiss the Receiver's fraudulent transfer claims involving constructive fraud. This motion to dismiss raises two issues: (1) whether the doctrine of adverse domination equitably tolls the statute of limitations; and (2) whether the Ponzi scheme presumption establishes the claims as *actual* fraudulent transfer claims, thereby allowing the claims to be brought within one year of their discovery.

The Uniform Fraudulent Transfer Act provides that claims which involve constructive fraud, as alleged under Utah Code Ann. § 25-6-5(1)(b) and § 25-6-6(1), must be brought "within four years after the transfer was made." *See* Utah Code Ann. § 25-6-10(2).

Claims which involve intentional or *actual* fraud, under Utah Code Ann. § 25-6-5(1)(a), must also be filed within four years, but such claims are subject to a one-year discovery rule. *See* Utah Code Ann. § 25-1-10(1). This rule allows actual fraudulent transfer claims to be brought within one year of their discovery. *Rappleye v. Rappleye*, 2004 UT App 290, ¶ 19, 99 P.3d 348.

However, Defendant asserts that equitable tolling is not appropriate because the constructive fraud claims are "extinguished" by a statute of repose. Defendant relies on a decision from an Idaho court which refused to apply the adverse domination doctrine in a similar case because the court considered the language "extinguished," in 28 U.S.C. § 25-6-10, as evidence of a statute of repose. *Klein v. Capital One Fin. Corp.*, 4:10-CV-629, 2011 U.S. Dist. LEXIS 83509, *21-*22 (D. Idaho July 29, 2011). However, Utah courts have declared that "the time limit in section 25-6-10(3) is a statute of limitation," and not a statute of repose. *Selvage v. J.J. Johnson & Associates*, 910 P.2d 1252, 1259 (Utah App., 1996). As a statute of limitation, unlike a statute of repose, equitable tolling may be appropriate. *Amoco Prod. Co. v. Newton Sheep Co.*, 85 F.3d 1464, 1472 (10th Cir. 1996).

A.      The Doctrine of Adverse Domination

For constructive fraud transfer claims, equitable tolling is appropriate under the doctrine of adverse domination. Under this doctrine, "the statute of limitations for an entity's claim is tolled when the entity is controlled or dominated by individuals engaged in conduct that is harmful to the entity." *Warfield v. Carnie*, Case No. 3:04-cv-633-R, at *15 (N.D. Tex. 2007) (citing *FDIC v. Jackson*, 133 F.3d 694, 698 (9th Cir. 1998). In *Wing v. Kendrick*, 2009 WL 1362383, at *3 (D. Utah May, 2009), the court stated that "the discovery rule generally applies in cases involving Ponzi scheme entities that have been placed in the hands of an equity receiver because the fraudulent nature of the transfers can only be discovered once the Ponzi operator has been removed from the scene."

Here, the doctrine of adverse domination applies because Andres had sole control and authority over Winsome until he was removed by the appointment of the Receiver. Thus, the

9

statute of limitations is tolled until the Receiver's appointment because prior to his appointment, "it would have been impossible for the receivership entities to have asserted their legal rights..." *Warfield*, 2007 WL 1112591, at *17. As a result, the four year statute of limitations did not begin to run until the Receiver's appointment and the claims are, therefore, timely.

      B.      <u>The Ponzi Scheme Presumption</u>

Under the Ponzi scheme presumption, any transfers made in the course of a Ponzi scheme are considered intentional or actual fraudulent transfers "because transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors." *In re Manhattan Inv. Fund Ltd.*, 397 B.R. 1, 8 (S.D.N.Y. 2007).

In this case, all of the transfers were made in the course of a Ponzi scheme. Furthermore, the Receiver has only alleged actual fraudulent transfers in the Complaint. Therefore, any fraudulent transfer claims at issue are to be considered actual fraud and not constructive fraud claims. As a result, the one-year discovery rule would apply to all fraudulent claims at issue and therefore, the claims are timely.

The court concludes that the Defendant's statute of limitations defense fails due to the doctrine of adverse domination, the Ponzi scheme presumption, and the one-year statutory discovery rule.  Accordingly, Defendant's motion to dismiss pursuant to Rule 12(b)(6) is denied.

CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is DENIED.

DATED this 18th day of June, 2012.

DALE A. KIMBALL,
United States District Judge