**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **R. WAYNE KLEIN, as Court Appointed Receiver for U.S. Ventures LC, Winsome Investment Trust, and the Assets of Robert H. Andres and Robert L. Holloway,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | Case No. 2:11CV953DAK |
| **vs.** | Judge Dale A. Kimball |
| **MAZEN RAMZI ABDULBAKI and NINA ABDULBAKI,** | |
| **Defendant.** | |

This matter is before the court on Defendant Nina Abdulbaki's Motion for Partial Summary Judgment on the value element of her good faith defense, and Plaintiff R. Wayne Klein's ("the Receiver") Alternative Motion for Rule 56(d) Relief.  On January 9, 2013, the court held a hearing on the motions.  At the hearing, Plaintiff was represented by David C. Castleberry and Aaron C. Garrett and Defendant was represented by Christine T. Greenwood.  The court took the motions under advisement.  The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties.  The court has further considered the law and facts relevant to the parties' motions.  Now being fully advised, the court enters the following Memorandum Decision and Order.

**BACKGROUND**

On January 24, 2011, the Commodity Futures Trading Commission ("CFTC") initiated a lawsuit in this District against U.S. Ventures, Winsome Investment Trust, Robert J. Andres, and Robert L. Holloway, alleging that the defendants were operating a fraudulent commodity investment program ("CFTC Action").   The CFTC Action is assigned to Judge Bruce Jenkins, Case No. 2:11-CV-99BSJ.  The CFTC asked the court to appoint a receiver over the affairs of Winsome Investment Trust and US Ventures.  Judge Jenkins appointed R. Wayne Klein as Receiver.  The Receiver has investigated the affairs of Winsome Investment Trust and US Ventures and determined Andres and Holloway operated both companies as Ponzi schemes.

In this action, Klein, as Receiver for U.S. Ventures, Winsome Investment Trust, and the assets of Robert J. Andres and Robert L. Holloway, seeks to recover funds from Defendant Nina Abdulbaki.  Abdulbaki is one of the rare investors who received more money from Winsome and Andres than she paid.  The parties dispute the amount of money Nina Abdulbaki invested in Winsome and the amount of money that she and her husband gave as personal loans to Andres.

Three weeks after the original Scheduling Order was entered in this action, Abdulbaki filed a motion for partial summary judgment.  In response, the Receiver filed a Rule 56(d) motion for additional discovery.  Abdulbaki bases much of her motion on her own attached declaration. Therefore, the Receiver would like to propound requests for documents, depose Nina and her husband, and conduct other discovery before the court decides the motion for summary judgment.

The dispute as to what Abdulbaki invested in Winsome or gave as personal loans to Andres focuses on the nature of Abdulbaki's payments to Andres and Winsome Trust.  In all,

Nina, Nina and her husband, and Nina and her husband's wholly-owned company, K&N, made five transfers to Winsome or Andres.

In 2006, Andres approached Abdulbaki and her husband about investing in Winsome Trust.  Nina Abdulbaki decided to invest.  On December 14, 2006, Nina initially invested $5,000, wrote a check to Winsome Trust from a personal checking account, and entered into an investment agreement with Winsome Trust, entitled a Joint Venture Agreement.  The Joint Venture Agreement outlines the basic parameters of the investment and states that it relates to her initial investment and future investments.  For example, she will be paid the returns on her investment bi-monthly, etc. Both parties agree that this initial investment and the signed agreement demonstrate that Nina Abdulbaki was an investor in the Winsome Trust Ponzi scheme.

However, the parties dispute whether the next payment to Andres was an investment in Winsome Trust.  Nina and her husband own a barbecue restaurant in Texas and frequently have large amounts of cash.  She claims the she made her next investment in Winsome Trust by giving Andres $ 25,000 in cash.  In return, Andres executed a Promissory Note to give her "additional protection" to receive a return on the money.  The Promissory Note, however, is executed by Andres individually and does not mention Winsome Trust or the Joint Venture Agreement.  The Note benefits both Nina and her husband and contains different terms than the investment agreement Nina entered with Winsome.  The Note provides for a very quick repayment time and large interest payment (over 1000% per annum).  Although not within the two-week time frame provided for in the Note, Andres paid Nina back the money and interest due amount with a direct deposit into her bank account about six weeks later.  The direct deposit specifically states it is

repayment of the Note and interest due under the Note.  The Receiver believes that based on the specific terms of the Promissory Note, it was a personal loan to Andres and not an investment in Winsome Trust.  The Receiver would like the opportunity to depose Nina Abdulbaki and/or her husband regarding her claims that it was viewed as an investment in the scheme.

On October 31, 2007, Nina wrote a check to Winsome Trust for $10,000 using a K&N Investments bank account.  K&N is wholly owned by Nina and her husband and it is the entity that owns their restaurant.  On November 23, 2007, Nina received a direct deposit in the amount of $17,500 in her personal bank account.  The Receiver would like discovery as to Nina's ownership interest in K&N and her right to receive the return on investment on its behalf in her personal bank account rather than the K&N account from which she made the investment.

On December 7, 2007, Nina and her husband gave Andres $20,000 in cash and Andres again executed a Promissory Note for their benefit in the amount of $20,000.  The money was to be repaid by December 24, 2007, along with $5,000 interest, which amounts to more than a 500% annual interest rate.  On March 28, 2008, Nina received a direct deposit in the amount of $30,000.  Again, the parties dispute whether this was an investment with Winsome Trust and the Promissory Note was given as additional security, or whether it was a separate cash loan from Nina and her husband to Andres individually.

In March 2009, the Abdulbakis gave another $5,500 to Andres.  The Abdulbakis claim that Andres told them that he was trying to gather additional funds from investors, which he said he needed in order to get a "package" released.  Once this "package" released, he would be able to pay all of his Winsome investors the money they were owed.  The Abdulbakis gave Andres the money in cash.  In return, Andres gave them a somewhat cryptic handwritten note stating that he

had received $5,500, the return would be $35,000 "upon package delivery," and "promissory note tomorrow." The Abdulbakis did not receive any further money from Andres or Winsome.

Abdulbaki claims that she invested $65,500 in Winsome Trust, received $82,250 in return, and thus made a $16,750 return. She agrees to remit her return to the receivership estate. The Receiver argues that the only facts known for certain at this point of the litigation is that Nina Abdulbaki invested $5,000 in Winsome Trust, K&N invested $10,000 in Winsome Trust, and based on the terms of the Promissory Notes, Nina and her husband, gave personal loans, with usurious rates of interest, to Andres, two of which were repaid and one was not.

## DISCUSSION

Abdulbaki moves for partial summary judgment on the value portion of her good faith defense to the Receiver's fraudulent transfer cause of action. Abdulbaki notes that her defense contains two elements–value and good faith–and the motion does not address the element of good faith, which she reserves the right to address in a subsequent motion for summary judgment or at trial. The Receiver asserts that there are genuine issues of material fact precluding summary judgment on the value element at this stage of the litigation. The Receiver filed a formal Rule 56(d) motion for additional discovery because no discovery had occurred before Abdulbaki filed her motion. Because the two motions are so closely related, the court will address them together.

Abdulbaki contends that she provided value in the amount of $65,500 to Andres and Winsome and she has a right to claim that amount against the receivership estate. Generally, a "winning" investor may be required to return money obtained through a Ponzi scheme. *See Donnell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008). But "there is a good faith defense that permits an innocent winning investor to retain funds up to the amount of the initial outlay." *Id.* at

771.  There are two elements to establishing a good faith defense: the transfers must have been

(1) made in good faith and (2) for reasonably equivalent value.  *See* Utah Code Ann. § 25-6-9(1).

Abdulbaki argues that the concept that an investor has a claim against a Ponzi scheme for the amount invested is critical here because she has a claim for the full amount of her principal outlay against not just Andres, but also against Winsome.  She claims that it is undisputed that all the money she gave to Andres was given as an investment in Winsome because she has provided a declaration stating that was her intent.  In addition, she contends that her payments to Andres should be considered payments to Winsome as well because, in the Ponzi scheme context, Andres and Winsome are each liable for the debts and conduct of the other.

The Receiver argues that with regard to reasonably equivalent value, there are two material fact disputes which the motion asks the court to decide in Abdulbaki's favor: (1) whether certain funds she lent to Andres were personal loans or investments in the Winsome Trust Ponzi scheme; and (2) whether the facts support Abdulbaki's claim that she should be credited for finds invested in Winsome Trust by K&N.  The Receiver believes that discovery is necessary before either of those issues can be resolved.

Utah courts have held that "satisfaction of an obligation owed the transferee by a third party does not qualify as fair consideration" under Utah's Fraudulent Transfer Act.  *Dahnken, Inc. v. Wilmarth*, 726 P.2d 420, 422 (Utah 1986).  However, Abdulbaki asserts that several cases have made the point that when an investor is being defrauded by one of the principals of the scheme, the investor should get credit for payments even if the money does not ultimately end up with one of the receivership estates.  Basically, the cases reason that principals of Ponzi schemes could do any number of things with the money they receive and it should not count against the

investor if their money does not end up being put in the scheme.

At this stage of the litigation, however, Abdulbaki cannot demonstrate that there is no disputed fact regarding whether receivership entities received reasonably equivalent value for the payments she made. There is a material fact dispute as to whether her cash payments to Andres were personal loans to him or investments in Winsome. Abdulbaki provides a declaration with her motion that she intended these payments to be investments in Winsome Trust under the Joint Venture Agreement. But, the Receiver has not been able to depose her yet to question her specifically on the general assertions made in her declaration.[1]

In addition, the documentary evidence creates questions of fact because it demonstrates that the cash payments Abdulbaki made to Andres were governed by promissory notes, not the Joint Venture Agreement. There is no mention of the Joint Venture Agreement or Winsome Trust in the promissory notes. The promissory notes have significantly different terms than Joint Venture Agreement's terms as to rates of return, payment dates, etc. Significantly, the promissory notes also give both Abdulbakis recourse against Andres personally. There is a genuine issue of fact as to whether these transfers were a personal loan given to Andres by both Abdulbakis or an investment by Nina Abdulbaki under her Joint Venture Agreement with Winsome.

None of the cases Abdulbaki cites are contrary to the Receiver's position. One case is

---

[1]  Pre-discovery motions for summary judgment are rarely granted and are disfavored. *See Patton v. General Signal Corp.*, 984 F. Supp. 666, 670 (W.D.N.Y. 1997). The granting of summary judgment with no discovery is to be "granted only in the clearest of cases" because of the importance of discovery for all parties. *Id.; see also Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303-4 (2d Cir. 2003) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.").

procedurally distinguishable to the present motion because it is a court's findings of fact and conclusions of law after a trial on the merits.  One case appears to be factually distinguishable because it involved whether an investor in one company run by the Ponzi scheme operator provided reasonably equivalent value for payments received from another company run by the Ponzi scheme operator.

Also, in *Wing v. Buchanan*, 2012 WL 775688 (D. Utah March 7, 2012), cited by Abdulbaki, Judge Benson decided to treat the defendants in a receivership case as one entity because the investors had commingled  investments and returns on investments between individuals and companies.  The court made no decision on the Ponzi scheme and its principals.  Rather, in this case, it would be akin to considering Abdulbaki and K&N as one entity, and such decision could not be made without further discovery.  There is a question of fact regarding the investment made by K&N and Abdulbaki's ability to receive the return on that investment personally.  The dispute on this issue can obviously be determined after discovery takes place, but it is too early to make the determination based solely only on Abdulbaki's declaration.

Moreover, the Receiver is entitled to recover all payments to a winning investor unless that investor can demonstrate both elements of the good faith defense.  While Abdulbaki focuses her motion only on the equivalent value prong, she will ultimately need to prove the good faith prong.  With respect to the $50,500 in cash Abdulbaki lent to Andres under the Promissory Notes, the interest rates create questions as to whether they were in the ordinary course of business.  The rates were in excess of 1,000% and 500% on the first two notes.  In addition, the notes were not repaid in a timely fashion, which could have put her on notice that there were solvency issues.  The circumstances of her transfers should be fully explored before the court

rules on Abdulbaki's defense. Given the fact questions as to the nature of the payments and her ability to receive the return on investment personally on behalf of K&N, the court will reserve ruling on the defense until discovery is complete and it can determine both prongs at the same time. The court concludes that Abdulbaki's motion is premature and denies it without prejudice.

## CONCLUSION

Based on the above reasoning, Defendant's Motion for Partial Summary Judgment is DENIED WITHOUT PREJUDICE and Plaintiff's Rule 56(d) Motion is GRANTED. Defendant may renew her motion after adequate discovery has been conducted.

Dated this 16th day of January, 2013.

BY THE COURT:

_____
Dale A. Kimball,
United States District Judge